## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ROBERT BRUCE HURST**                    **CIVIL ACTION**

**VERSUS**                               **CASE NO. 14-1819**

**BAKER HUGHES, INC.** *ET AL.*          **SECTION: "G" (1)**

### ORDER AND REASONS

Presently pending before the Court is a "Motion for Summary Judgment"[1] filed by Defendant Baker Hughes Oilfield Operations, Inc. ("BHOOI"). Having reviewed the motion, the memorandum in support, the memorandum in opposition, the record, and the applicable law, the court will deny the pending motion.

### I. Background

*A.    Factual Background*

In his amended complaint, Hurst alleges that he was a Jones Act Seaman employed by BHOOI and assigned to the West Esperanza, a vessel allegedly owned and/or operated by Defendant Seadrill Americas, Ltd. ("Seadrill").[2]  According to Hurst, the West Esperanza and its crew were hired by Hess to perform a workover of a Hess oil well off the coast of Equatorial Guinea, during which operation the West Esperanza was stationed next to a Tension Leg Platform ("TLP") that

---

[1] Rec. Doc. 27.

[2] Rec. Doc. 10 at p. 3.

housed the derrick for the well.[3] According to Hurst, a Hess supervisor, or "company man," supervised operations on the drilling floor at all relevant times.[4]

Hurst contends that while the West Esperanza was stationed next to the TLP, a Seadrill employee was tasked to work on a broken "hawkjaw" apparatus, a heavy hydraulic device used to move pipe into place on the derrick.[5] Hurst alleges that this employee left the device's telescoping arm improperly secured above the derrick structure, did not "tag out" the cable used to secure it, and did not warn workers located below that the device was at risk of falling.[6] Hurst contends that the hawkjaw's arm subsequently fell to the deck of the TLP, striking a glancing blow to his upper back, and thereby causing his injuries.[7]

**B.      *Procedural Background***

Hurst filed a complaint in this matter on August 11, 2014.[8] Defendant Baker Hughes, Inc. ("Baker Hughes") filed a "Rule 12 Motion to Dismiss" on September 9, 2014.[9] On September 10, 2014, Hurst filed an amended complaint, in which he identifies BHOOI as his employer and as the Baker Hughes entity allegedly liable in this matter.[10] On October 30, 2014, BHOOI filed an

---

[3] *Id.*

[4] *Id.*

[5] *Id.* at pp. 3–4.

[6] *Id.* at p. 4.

[7] *Id.* at p. 5.

[8] Rec. Doc. 1.

[9] Rec. Doc. 6.

[10] Rec. Doc. 10.

answer.[11] On December 9, 2014, Hess filed an answer.[12] On February 13, 2014, with leave of Court, ACE American Insurance Company ("ACE") filed a "Complaint of Intervention." On June 2, 2015, BHOOI filed the instant motion.[13] On June 9, 2015, Hess filed a "Motion for Summary Judgment."[14] On July 1, 2015, Hurst filed an opposition to the instant motion. On July 13, 2015, the Court granted Baker Hughes's "Rule 12 Motion to Dismiss" and Hess's "Motion for Summary Judgment."[15]

## II. Parties' Arguments

### A.   *BHOOI's "Motion for Summary Judgment"*[16]

In the instant motion, BHOOI contends that Hurst "does not qualify as a seaman under the Jones Act," and that the Court should therefore grant it judgment as a matter of law.[17] In support of this assertion, BHOOI first contends that "[i]t is long and well-settled in the jurisprudence that oilfield service company workers" like Hurst, "who do not work for the vessel-owning drilling company, but rather work for service companies like BHOOI, and perform their specialized service work on different rigs contracted to the well operators who hire their rigs, are not Jones Act seamen."[18] BHOOI argues that it did not own the vessels upon which Hurst worked during his tenure as Rig Site Coordinator with BHOOI, and that "[i]t is simply not in the cards" for employees like

---

[11] Rec. Doc. 11.

[12] Rec. Doc. 14.

[13] Rec. Doc. 27.

[14] Rec. Doc. 28.

[15] Rec. Doc. 34; Rec. Doc. 35.

[16] Rec. Doc. 27.

[17] *Id.* at p. 1.

[18] Rec. Doc. 27-1 at p. 15.

Hurst to be assigned to a single drilling rig, or fleet of drilling rigs, after BHOOI has completed a particular work assignment.[19] Here, BHOOI contends, if Hurst had not been injured, he would have continued to work on the West Esperanza "only so long as the West Esperanza continued to work for Hess."[20]

Second, BHOOI argues that Hurst spent "significantly less" work time aboard a vessel "than the 30% rule-of-thumb required to qualify for seaman status."[21] Nonetheless, BHOOI contends, the issue of how much time Hurst spent offshore is not material, because the West Esperanza was "not owned or operated by his employer, and was not part of any 'fleet' owned or operated by his employer."[22] According to BHOOI, courts have "summarily reject[ed] seaman status claims for oilfield service company workers like Hurst, who work on different vessels owned by different companies."[23]

Third, BHOOI argues that TLPs, such as the one "which Hurst was assigned to—and physically standing on at the time of his accident—are not vessels."[24] On this point, BHOOI contends that the facts of the instant case are "entirely indistinguishable" from the facts in the United States Court of Appeals for the Fifth Circuit's decision in *Hufnagel v. Omega Service Industries, Inc*,[25] in which the court allegedly found that the issue of seaman status was not "even arguable"

---

[19] *Id.*

[20] *Id.*

[21] *Id.* at p. 16.

[22] *Id.*

[23] *Id.* at pp. 16–17.

[24] *Id.* at p. 18.

[25] *Id.* at p. 19.

where the plaintiff: (1) worked for an oilfield service company hired to perform repairs on another entity's fixed offshore platform; (2) lived on a vessel provided by a third entity hired by the platform owner; and (3) was injured while working aboard the platform.[26]

BHOOI argues that even if Hurst contends that he was a seaman because he was assigned to work "exclusively" aboard the West Esperanza for a lengthy period of time, the "jurisprudence is clear that the vessel owner / operator and the plaintiff's employer must be one and the same," unless one of three "very narrow sets of special circumstances" are present.[27] Specifically, BHOOI contends, seaman status may be found where the vessel owner or operator does not employ  the plaintiff when: (1) the vessel owner or operator is the plaintiff's "borrowing employer;" (2) the plaintiff's  employer "has effectively manipulated his status by choosing not to own or operate the vessels aboard which the employee performs traditional, blue water seaman work," such as anchor handling; or (3) the plaintiff "is employed by a contractor providing a necessary galley function to the vessel owner or operator," such as cooks or galley hands employed by a caterer.[28]

According to BHOOI, none of these exceptions are present here.[29] BHOOI argues that Hurst was not Seadrill's borrowed employee, because he was paid by BHOOI, took his instruction from BHOOI, "worked solely with BHOOI's equipment and tools," and "was doing BHOOI's work at all times."[30] BHOOI further contends that it has not effectively manipulated Hurst's seaman status by choosing not to own or operate the vessels aboard which Hurst worked, because BHOOI "does

---

[26] *Id.* at p. 19 (citing *Hufnagel v. Omega Service Industries, Inc.*, 182 F.3d 340 (5th Cir. 1999)).

[27] *Id.* at p. 20.

[28] *Id.* at pp. 20–21.

[29] *Id.* at p. 21.

[30] *Id.* at p. 20.

not own, and never charters or borrows, any drilling vessels," and "has absolutely no control over" what entity is chosen by its customer to provide the rig.[31]  Finally, BHOOI argues that Hurst "is in no way analogous to a contract catering employee," because Hurst's "connection was not to the West Esperanza," but rather to "his employer, BHOOI," and because Hurst "was not performing work typically done by the Seadrill crew," rendering the third exception inapplicable here.[32]  Thus, BHOOI contends, Hurst "is not a seaman," and his claims against BHOOI should be dismissed.[33]

## B.    Hurst's Opposition

In opposition to the instant motion, Hurst contends that in *Offshore Co. v. Robison*, the United States Court of Appeals for the Fifth Circuit held that the issue of Jones Act seaman status should, "in all but the most extreme cases," be decided by the jury.[34] Hurst argues that although the Fifth Circuit's *Hufnagel* decision, cited by BHOOI, illustrates that certain offshore oil workers may be excluded from the Jones Act as a matter of law in "extreme" cases, the present case falls more closely in line with *Robison*, foreclosing this Court from determining, as a matter of law, that Hurst was not a Jones Act seaman.[35]

According to Hurst, the United States Supreme Court's *Chandris v. Latsis* decision sets forth two factors that guide the Court's inquiry on the instant issue: (1) whether the plaintiff does "the ship's work;" and (2) whether the plaintiff has "a connection to the vessel which is significant in

---

[31] *Id.* at pp. 21-22.

[32] *Id.* at pp. 22-25.

[33] *Id.* at pp. 23–24.

[34] Rec. Doc. 33-1 at p. 4 (citing *Offshore Co. v. Robison*, 266 F.2d 769, 771 (5th Cir. 1959)).

[35] *Id.* at pp. 4–5.

both time and nature."[36] As to the first *Chandris* factor, Hurst argues that his "duties furthered the purpose of the West Esperanza and the accomplishment of its mission," because "it is undisputed that the vessel's purpose was to deliver and support equipment needed for the completion of Hess's oil wells," and because it is also undisputed that Hurst's duties "were to oversee, coordinate, and supervise well completion activities."[37] Hurst contends that while the plaintiff in *Hufnagel* was "a roughneck assigned to assist welders and fitters" whose duties were therefore "relevant only to the platform itself" rather than to the vessel, Hurst "could not accomplish his mission without the drilling rig package delivered and supported by the West Esperanza, and the West Esperanza could not accomplish its mission without coordination and oversight of its equipment by [Hurst]."[38] Hurst further argues that the drilling rig package was equipment, or an appurtenance, of the West Esperanza, because it is uncontested that "the rig remained connected to pumps on the tender."[39] Thus, Hurst argues, because he was responsible for overseeing and coordinating the usage of the drilling rig package, "it is clear that he was furthering the purpose of the West Esperanza and the accomplishment of its mission."[40]

 As to the second *Chandris* factor, Hurst argues that his "connection to the West Esperanza was significant in both duration and nature"[41] for several reasons. First, Hurst argues, he spent a "significant portion of his time aboard the vessel," because: (1) his prior land-based

---

[36] *Id.* at p. 4 (citing *Chandris v. Latsis*, 515 U.S. 347 (1995)).

[37] *Id.* at p. 5.

[38] *Id.* at p. 6.

[39] *Id.* at p. 7.

[40] *Id.*

[41] *Id.*

assignment—preparing equipment to be loaded on the West Esperanza—was separate from his assignment to work on the West Esperanza, and BHOOI's own supporting affidavit indicates that this assignment ceased, and his assignment to work on the West Esperanza began, when that vessel became moored to the TLP on November 25, 2013; and (2) "Passenger on Board" sheets prepared by Seadrill list him along with the ship's crew.[42] Thus, Hurst contends, "it is only appropriate to consider the working days in the time period after November 25, 2013," during which time he spent 34 of 88 working days, or more than 38% of his time, aboard the West Esperanza.[43] Hurst further avers that he "expected to spend an even higher percentage of time than that on the vessel" if he had not been injured.[44]

Hurst also addresses several "miscellaneous arguments" made by Defendants.[45] First, Hurst contends that he "does not need to be on board the vessel during navigation to qualify as a Jones Act seaman," because Fifth Circuit precedent instructs that a plaintiff "can be considered a seaman, if he fits the *Chandris* criteria, even when his entire connection to the vessel occurs when it is moored."[46] Second, Hurst asserts that he does not lose his seaman status merely because he was injured on the TLP, because a plaintiff "need only show that he was acting within the course of his employment when the injury occurred to retain his coverage under the Jones Act," as is undisputed here.[47] Third, Hurst argues that "ownership or control of the West Esperanza is not relevant to this

---

[42] *Id.* at pp. 7–9.

[43] *Id.* at pp. 9–10.

[44] *Id.* at p. 10.

[45] *Id.*

[46] *Id.* at pp. 10–11 (citing *Naquin v. Elevating Boats, L.L.C.*, 744 F.3d 927, 935 (5th Cir. 2014)).

[47] *Id.* at pp. 11–12 (citing *Brauen v. Pfeifer Oil Transp. Co.*, 361 U.S. 129 (1959)).

case," because Fifth Circuit precedent holds that "ownership or control over a vessel has no effect on the liability of an employer to his employee-seamen."[48]

### III. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[49] A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[50] In deciding a motion for summary judgment, the Court "construes all facts and inferences in the light most favorable to the nonmoving party."[51] However, summary judgment "may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence."[52]

### IV. Analysis

**A.    *Legal Standard: Jones Act Seaman Status*[53]**

The Supreme Court has developed a two-prong test to determine seaman status. First, a plaintiff must show that his duties "contribut[e] to the function of the vessel or to the accomplishment of its mission."[54] Second, "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration

---

[48] *Id.* at p. 12 (citing *Bertrand v. Int'l Mooring & Marine, Inc.*, 700 F.2d 240, 245 (5th Cir. 1983)).

[49] *Rogers v. Bromac Title Serv., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014) (citations omitted).

[50] *Id.* (citations omitted).

[51] *Id.* (citations omitted).

[52] *Id.* (citations omitted).

[53] In *Stelly v. Abdon Callais Offshore, L.L.C.*, No. 12-2498, 2013 WL 3200092 (E.D. La. Jun. 21, 2013) (Brown, J), this Court set forth the legal standard governing seaman status. It is set forth, and applied, here.

[54] *Chandris*, 515 U.S. at 368.

and its nature."[55] "Generally, the Fifth Circuit seems to have identified an appropriate rule of thumb for the ordinary case: A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act."[56]

"The seaman inquiry is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury."[57] The Fifth Circuit has instructed "'that the question of seaman status should only be removed from the trier of fact (by summary judgment or directed verdict) in rare circumstances and that even marginal Jones Act claims should be submitted to the jury.'"[58] However, "judgment as a matter of law is mandated where the facts and the law will reasonably support only one conclusion."[59]

**B.    *Analysis***

**1.    First *Chandris* Prong**

Pursuant to the first *Chandris* prong, a Jones Act seaman must "contribut[e] to the function of the vessel or to the accomplishment of its mission."[60] The Fifth Circuit has held that it is "relatively easy," to satisfy this prong, because "a plaintiff need only show that he does the ship's

---

[55] *Id.*

[56] *Id.* at 371.

[57] *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 554 (1997).

[58] *Sharp v. Johnson Bros. Corp.*, 917 F.2d 885, 888 (5th Cir. 1990) (quoting *Bernard v. Binnings Constr. Co.*, 741 F.2d 824, 827 (5th Cir. 1984)).

[59] *Becker*, 335 F.3d at 386.

[60] *Chandris*, 515 U.S. at 368.

10

work."[61] "This threshold requirement is 'very broad,' encompassing 'all who work at sea in the service of a ship.'"[62]

On this point, BHOOI contends that Hurst "had no responsibility or role in operating, maintaining, repairing or using any of the West Esperanza's equipment, gear, tackle, or appurtenances," "did not take any direction in his work from any Seadrill employees," "was not authorized by BHOOI to direct or supervise the work of any Seadrill employees," and "was never, at any time, assigned to the West Esperanza or to any particular drilling rig or fleet of drilling rigs under common ownership."[63] Hurst counters that it is undisputed that he was assigned to be aboard the West Esperanza to "oversee, coordinate, and supervise well completion activities,"[64] in which capacity he was responsible for the "operation of the drilling rig transported and supported by the West Esperanza," which "contributed to the function of the vessel and the accomplishment of its mission."[65]

The parties dispute whether the Fifth Circuit's *Hufnagel* decision controls this issue. In that case, the Fifth Circuit found that the plaintiff failed to state a Jones Act claim in part because "his duties in no way contributed to the function of the vessel or to the accomplishment of its mission,"[66] and therefore failed to satisfy this *Chandris* factor. The court explained:

> [The plaintiff's] duties involved platform work, and were not related to the navigation, maintenance, or voyage of the [vessel].  [The plaintiff's] sole purpose for

---

[61] *Becker*, 335 F.3d at 378 (quoting *Chandris*, 558 U.S. at 368) (internal brackets omitted).

[62] *Id.* (quoting *Chandris*, 515 U.S. at 368).

[63] Rec. Doc. 27–1 at pp. 13-14; 18.

[64] Rec. Doc. 33-1 at p. 5 (citing Rec. Doc. 27–2 at pp. 3–4).

[65] *Id.* at pp. 5–6.

[66] 182 F.3d 340 at 347 (citations omitted).

being present on the platform or the [vessel] related to the repair of the platform. The [vessel], by contrast, was present to support the repair crew by providing lodging quarters and a work area. [The plaintiff's] duties as a platform worker in no way contributed to "doing the ship's work" . . . The facts that [the plaintiff] ate, slept, and spent time on the [vessel] do not make him a crew member.[67]

The Court finds *Hufnagel* distinguishable from the present case. In *Hufnagel*, the vessel at issue served as a "temporary work station and a hotel where the workers ate and slept,"[68] and the plaintiff worked on the platform, rather than the vessel. Here, by contrast, an affidavit of James "Reggie" Boggs, submitted by BHOOI, indicates that the West Esperanza "transports, erects, and then supports modular drilling rig packages on top of fixed structures such as the . . . [TLP]."[69] Further, Hurst stated in his deposition that the West Esperanza served as a "drilling package and a living facility" that is "all connected,"[70] and stated in his affidavit that the West Esperanza remained connected to the rig for certain power and pumping functions.[71]  Accordingly, here, unlike in *Hufnagel*, the record suggests that the vessel served as more than a mere "hotel" or "temporary work station," and rather served as a location where work was performed.

Additionally, Hurst has adduced evidence that he performed work on the West Esperanza and on the rig. A job description submitted by Hurst indicates that Rig Site Coordinators—Hurst's undisputed role at all relevant times[72]—are responsible for a number of activities "on the rig."[73]

---

[67] *Id.*

[68] *Id.* at 345.

[69] Rec. Doc. 27-2 at p. 4.

[70] Rec. Doc. 27-4 at p. 115.

[71] Rec. Doc. 33-3 at p. 2.

[72] Rec. Doc. 27-2 at p. 5 (Boggs's affidavit identifying Hurst as Rig Site Coordinator); Rec. Doc. 33-3 at p. 1 (Hurst's affidavit stating that he served as Rig Site Coordinator).

[73] Rec. Doc. 33-4 at p. 1.

Along these lines, Hurst stated in his affidavit that "all of the work that [he] did offshore was either aboard the [West Esperanza] itself, or with the drilling package attached to it."[74] The Fifth Circuit "has repeatedly held that special-purpose movable drilling rigs . . . are vessels within the meaning of admiralty law."[75] Thus, the evidence adduced here suggests that Hurst performed work on the vessel, further distinguishing this case from *Hufnagel*.

BHOOI also contends that Hurst was actually assigned to the TLP, and that TLPs "are not vessels."[76] However, as noted above, the job description submitted by Hurst indicates that he had duties "on the rig," and Boggs's affidavit indicates that Hurst was "assigned to work aboard the West Esperanza," albeit after it was moored at the TLP.[77] Further, as noted above, Hurst stated in his affidavit that "[a]ll of the work that [he] did offshore was either aboard the [West Esperanza] itself, or with the drilling package attached to it, if [he] was on the TLP."[78] Thus, even assuming that TLPs are not vessels, a rational trier of fact could find that Hurst was assigned to the vessel, rather than to the TLP.

The Fifth Circuit instructs that "even marginal Jones Act claims should be submitted to the jury."[79] The foregoing evidence suggests that factual issues remain regarding: (1) whether Hurst worked on the West Esperanza and the rig; (2) whether the West Esperanza's mission was to deliver

---

[74] Rec. Doc. 33-3 at p. 2.

[75] *Demette v. Falcon Drilling Co., Inc.*, 280 F.3d 492, 498  n. 18 (5th Cir. 2002) *overruled on other grounds by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009) (en banc).

[76] Rec. Doc. 27-1 at p. 18. *See also* Rec. Doc. 27-2 at p. 3 (Boggs affidavit stating that Hurst was assigned to the TLP).

[77]  Rec. Doc. 33-4 at pp. 1–3; Rec. Doc. 27-2 at p. 4.

[78] Rec. Doc. 33-3 at p. 2.

[79] *Sharp v. Johnson Bros. Corp.*, 917 F.2d 885 (5th Cir. 1990) (citations omitted).

and support the rig; and (3) whether Hurst's responsibilities therefore contributed to the function of the vessel and the accomplishment of its mission. Viewing this evidence in the light most favorable to Hurst, a rational trier of fact could find in his favor regarding this *Chandris* prong. However, *Chandris* instructs that a plaintiff must also satisfy the second prong of its test. The Court will therefore now turn to this second prong.

### 2.      Second *Chandris* Prong

The second *Chandris* prong requires that a plaintiff "have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature."[80] As the Supreme Court explains:

> The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea.[81]

Construing this prong of *Chandris*, the Fifth Circuit has held that:

> [A] worker seeking seaman status must separately demonstrate that his connection to a vessel or fleet of vessels is, temporally, more than fleeting, and, substantively, more than incidental. These inquiries are not always distinct, but are interrelated elements of the same substantial connection requirement.[82]

### a.      Duration

The parties dispute whether Hurst's connection to the West Esperanza was sufficiently significant in duration. On this point, BHOOI contends that "the records show" that Hurst spent 24%

---

[80] *Chandris*, 515 U.S. at 368.

[81] *Id.*

[82] *Naquin v. Elevating Boats, L.L.C.*, 744 F.3d 927, 933 (5th Cir. 2014).

of his time "offshore" during his first rotation to Africa.[83] Hurst does not dispute this calculation, but rather argues that the relevant interval of time, for purposes of this part of the *Chandris* analysis, falls between November 25, 2013, when he began his work aboard the West Esperanza, and May 5, 2014, when he was injured.[84] During this period, he contends, he spent "over 38% of his time" aboard the West Esperanza.[85]

As a "general rule of thumb . . . [a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act."[86] Addressing the relevant time period for making this measurement, *Chandris* instructs that "[i]f a maritime employee receives a new work assignment in which his essential duties are changed, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new position."[87] However, the Court in *Chandris* cautioned against employing a "'snapshot' test for seaman status, inspecting only the situation as it exists at the instant of injury," holding that "a more enduring relationship is contemplated in the jurisprudence."[88] Construing *Chandris*, the Fifth Circuit has held that "merely serving an assignment on a vessel in navigation does not alter a worker's status."[89] Thus, when a plaintiff contends that he has become a seaman by virtue of a new assignment, the Fifth Circuit has held that he must show that:

---

[83] Rec. Doc. 27-1 at p. 16; Rec. Doc. 27-14 at p. 5.

[84] Rec. Doc. 33-1 at pp. 8–9.

[85] *Id.* at pp. 9–10.

[86] 744 F.3d 927, 933-34 (citing *Chandris*, 515 U.S. at 371).

[87] *Chandris*, 515 U.S. at 372.

[88] *Id.* at 363 (citing *Easley v. So. Shipbuilding Corp.*, 965 F.2d 1, 5 (5th Cir. 1992)).

[89] *Becker v. Tidewater, Inc.*, 335 F.3d 376, 390 (5th Cir. 2003).

[1] [H]e was removed from his former [land-based] position . . . and assigned to a new, sea-based position, [2] this reassignment permanently changed his status, and [3] by serving in this new position, [he] would spend at least 30% of his time aboard a vessel.[90]

In *Becker v. Tidewater, Inc.*, the plaintiff, a summer intern assigned largely to land-based work, was instructed to join the crew of a technology vessel, during which time he "engaged in real work while onboard," but was severely injured during his first day on the job.[91] At the ensuing trial, the jury found that the plaintiff was a seaman.[92] On appeal, the Fifth Circuit held that no reasonable jury could conclude that the plaintiff was a seaman, because there was:

[A]bsolutely no evidence that plaintiff's assignment served to alter [the defendant's] overall plan for him, which comprised land-based work almost exclusively. Thus, plaintiff cannot carry his burden that he was reassigned from his job as a summer engineering intern to a regular and continuous sea-based employment position aboard the [vessel].[93]

In so holding, the court rejected the plaintiff's argument that he could be a seaman because he "was ordered to work a crew position" aboard a vessel, because there was "no evidence that plaintiff's planned activities were permanently changed or that his essential duties as an intern had been altered by his assignment to the [vessel]."[94]

---

[90] *Id.* at 390.

[91] *Id.* at 383.

[92] *Id.* at 385.

[93] *Id.* at 390.

[94] *Id. See also Martin v. Fab-Con, Inc.*, 7 F. Supp. 3d 645 (E.D. La. 2014) (Vance, C.J.) (applying *Becker* and holding that "There is no evidence that the nature of [the plaintiff]s employment was permanently changed or that his that his essential duties ... had been altered by his assignment to the [vessel]. Instead, the evidence indicates that [the] plaintiff's position on the [vessel] arose by happenstance, when plaintiff was unable to obtain sufficient hours working on fixed platforms and asked Nguyen for extra work. According to Nguyen's affidavit, plaintiff was to return to his work as a cook on fixed platforms as soon as his seven-day hitch on the UNITY ended. In other words, plaintiff's work aboard the UNITY was only temporary; it did not constitute the kind of regular or continuous commitment of his labor to the service of that vessel that regularly exposed him to the perils of the sea within the meaning of *Chandris*.") (citations and internal quotation marks omitted).

16

Applying these rules here, Hurst contends that "[b]efore being assigned to the West Esperanza," he was "working on a separate, land-based assignment."[95] In support of that assertion, Hurst points to statements he made in his deposition that he spent a whole "hitch," or 28-day working period, on land before starting work on the West Esperanza. [96] Hurst further argues that Boggs's affidavit confirms that this assignment "ceased" once he was assigned to work on the West Esperanza.[97] In that affidavit, Boggs states, in part, that "Hurst was never assigned to be aboard the West Esperanza at any time when it was underway. Hurst was only assigned to work aboard the West Esperanza after it traveled to the . . . TLP and was moored to the platform."[98] Based upon these statements, a rational trier of fact could find that Hurst received a new assignment at the time he began working on the West Esperanza. Further, even if Hurst only worked aboard the West Esperanza when it was moored, his work on the vessel could nonetheless be deemed to be sea-based, because a plaintiff may form a substantial connection to a vessel if his work aboard the vessel occurs while it is mooring, moored, or docked, as long as his work exposes him to the perils of the sea.[99]

Considering whether the reassignment permanently changed Hurst's status or altered his essential duties, the Fifth Circuit has held that a "permanent" change in status is one that occurs "for an indefinite period."[100] On this point, Hurst stated in his declaration that "[w]henever [he] was not

---

[95] Rec. Doc. 33-1 at p. 9 (citing Rec. Doc. 27-4 at pp. 109-10).

[96] Rec. Doc. 27-4 at pp. 109-10.

[97] Rec. Doc. 33-1 at p. 9 (citing Rec. Doc. 27-2 at p. 4).

[98] Rec. Doc. 27-2 at p. 4.

[99] *Naquin*, 744 F.3d at 935 (concluding that evidence supported the jury's finding that a shipyard vessel repair supervisor was a seaman) (citing *In re Endeavor Marine Inc.*, 234 F.3d 287, 291–92 (5th Cir. 2000)).

[100] *Smith v. Nicklos Drilling Co.*, 841 F.2d 598, 600 (5th Cir. 1988).

aboard the [vessel], [he] left [his] belongings on the vessel, expecting that [he] would return."[101] Boggs, however, stated in his declaration that Hurst "would not have continued to . . . work aboard the West Esperanza once its assignment to the . . . TLP ended."[102] Accordingly, a factual dispute exists regarding the duration of Hurst's assignment to the West Esperanza.  Finally, regarding the proportion of time spent at sea, Hurst states in his declaration that he spent 34 of 88 working days aboard the West Esperanza, or approximately 38% of his time.[103] Accordingly, on this record, a rational trier of fact could find that Hurst spent more than 30% of his working time aboard the vessel.

Viewing the evidence in the light most favorable to Hurst, a rational trier of fact could find for Hurst regarding the "duration" component of this *Chandris* prong.

### b.   Nature of Connection

The parties also dispute whether Hurst's connection to the West Esperanza was sufficiently substantial in nature. On this point, BHOOI argues that "oilfield service company workers" like Hurst, "who [1] do not work for the vessel-owning drilling company, but rather work for service companies like BHOOI, and perform their specialized service work on [2] different rigs contracted to the well operators who hire those rigs," are categorically "not Jones Act seamen."[104] Hurst contends that (1) he does not need to be on board the vessel during navigation to qualify as a seaman, an issue addressed above; (2) his offshore oilfield work is maritime in nature; (3) the situs of his injury is irrelevant to his seaman status; and (4) the ownership or control of the West

---

[101] Rec. Doc. 33-3 at p. 4.

[102] Rec. Doc. 27-2 at p. 6.

[103] Rec. Doc. 33-3 at p. 4.

[104] Rec. Doc. 27-1 at p. 15.

Esperanza is not relevant to this case.[105] In considering this *Chandris* prong, the focus of the Court's inquiry is on whether the plaintiff had a "more than incidental" connection to a vessel.[106]

      As an initial matter, the Court has already determined that Hurst may establish seaman status even if he only worked on the vessel while it was moored, as long as Hurst was exposed to the perils of the sea.[107] BHOOI does not address whether Hurst was exposed to the perils of the sea, but rather argues that "none of the BHOOI services Hurst coordinated are either exclusively or inherently maritime in nature."[108] BHOOI does not cite any authority in support of this assertion or otherwise connect the assertion to any of its legal arguments.

      First, BHOOI contends that Hurst cannot establish seaman status because "the West Esperanza was not owned or operated by his employer, and was not part of any 'fleet' owned or operated by his employer."[109] On this point, the Fifth Circuit has "specifically held that in the context of the single vessel, the employer need not be the owner or operator of the vessel for Jones Act liability to attach."[110] Rather, "[a] Jones Act claim . . . requires proof of an employment relationship either with the owner of the vessel or with some other employer who assigns the worker to a task

---

[105] Rec. Doc. 33-1 at pp. 10–13.

[106] *Naquin,*, 744 F.3d at 933.

[107] *See Naquin,* 744 F.3d at 935.

[108] Rec. Doc. 27-1 at p. 12.

[109] Rec. Doc. 27-1 at p. 16.

[110] *Bertrand v. Int'l Mooring and Marine, Inc.*, 700 F.2d 240, 245 (5th Cir. 1983).

creating a vessel connection."[111] Furthermore, the Fifth Circuit has observed that "it may . . . be possible for a seaman to have more than one Jones Act employer."[112]

Common ownership or control is required where a plaintiff asserts seaman status based upon his connection to an "identifiable group," or fleet, of vessels.[113] Such is not the case here. Rather, Hurst contends that he is a seaman based upon his assignment to a single vessel, the West Esperanza, made by his employer, BHOOI. Thus, BHOOI's cited cases addressing the ownership or control of a group of vessels[114] are inapposite.

---

[111] *Guidry v. So. La. Contractors, Inc.*, 614 F.2d 447, 452 (5th Cir. 1980).

[112] *Id.*

[113] *See Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548 (5th Cir. 1997) ("When the inquiry . . . turns on whether the employee has a substantial connection to an identifiable group of vessels, common ownership or control is essential for this purpose."); *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 375–76 (5th Cir. 2001) ("[W]hen a group of vessels is at issue, a worker who aspires to seaman status must show that at least 30 percent of his time was spent on vessels, every one of which was under his defendant-employer's common ownership or control.").

[114] *See Roberts*, 266 F.3d at 375–78; *Langston v. Schlumberger Offshore Servs., Inc.*, 809 F.2d 1192, 1194 (5th Cir. 1987) ("The group of vessels Langston worked aboard simply does not qualify as a fleet as we have defined that term. She was assigned to work aboard fifteen different vessels owned by ten different owners; thus the summary judgment evidence does not suggest that these vessels were commonly controlled or had any other nexus that would support a finding that they were a fleet."); *Lirette v. N.L. Sperry Sun, Inc.*, 831 F.2d 554, 556 (5th Cir. 1987) ("Lirette was not a Jones Act seaman because the 23 special purpose drilling rigs he worked aboard were not under the common ownership or control of his employer nor did they share a nexus which would support a finding that they were a fleet."); *Ardleigh v. Schlumberger Ltd.*, 832 F.2d 933, 934 (5th Cir. 1987) ("Even accepting these inferences, Ardleigh still had no relationship to a fleet of vessels. Despite the presence of Schlumberger's CSU units, the oil company vessels did not "act[ ] together or under one control." The fact that the installation of CSU units might have made it easier to predict the vessels on which Ardleigh would be assigned to work says nothing about the relationship between those vessels. Under our cases, then, Ardleigh cannot be classified as a seaman."); *Barrett*, 781 F.2d 1067, 1074 (5th Cir. 1986) (en banc) ("In this case, we consider the duration of the employee's assignment necessary to support submission to a jury of the question whether he performed a substantial portion of his duties aboard a vessel or fleet of vessels. By fleet we mean an identifiable group of vessels acting together or under one control.") *George v. Cal-Dive Int'l*, No. 09-5472, 2010 WL 2696876 (E.D. La. Jul. 1, 2010) (Berrigan, J.) ("In light of the multitude of precedent discrediting Plaintiff's argument, this Court finds that the only connection that a reasonable jury could identify among the vessels on which plaintiff worked is that each vessel owner had a separate contract with Defendant to obtain temporary, as-needed catering and cleaning staff. This is not sufficient to establish Jones Act seaman status under the group of vessels concept"); *Thibodeaux v. M-I, L.L.C.*, No. 07-1278, 2009 WL 667196, (W.D. La. Mar. 11, 2009) ("The only connection a reasonable jury could identify among the vessels upon which Mr. Thibodeaux worked is that the owner of each vessel hired the same oilfield service provider—plaintiff's employer.").

BHOOI also contends that several cases set forth narrow "exceptions" to the alleged categorical rule that "the vessel owner/operator and the plaintiff's employer must be one and the same."[115] First, BHOOI cites *Barrios v. Louisiana Const. Materials Co.*, in which the Fifth Circuit considered whether "the Jones Act imposes an independent requirement that the Jones Act defendant must be either an 'owner' or an 'operator' of a vessel before liability can be imposed."[116] Noting that the then-existing case law was in "substantial conflict" on the issue, the court decided the case "on its individual facts," holding that the plaintiff's employer was "a proper Jones Act defendant even though the jury determined that it did not have operational control over the vessel," because:

> The jury found that [the plaintiff] was employed by Williams-McWilliams and assigned to duties which bore a sufficiently permanent connection to the spud barge to qualify Barrios as a member of its crew. In addition the jury found that Williams-McWilliams supervised the particular operations which gave rise to Barrios' injury and that the negligence of Williams-McWilliams was a cause of the injury. Where the plaintiff has established these traditional elements of a Jones Act recovery, it would be a strained and artificial construction of the Act to impose any additional requirement that the defendant have operational control over the entire vessel.[117]

Although *Barrios*, standing alone, suggests that the applicable authorities were in conflict regarding whether an employer must own or control a single vessel, subsequent Fifth Circuit decisions have clarified the issue, holding that "the employer need not be the owner or operator of the vessel or fleet of vessels" in question.[118]

---

[115] Rec. Doc. 27-1 at p. 20.

[116] 465 F.2d 1157, 1164 (5th Cir. 1972).

[117] *Id.* at 1166.

[118] *New v. Assoc. Painting Serv., Inc.*, 863 F.2d 1205, 1208 (5th Cir. 1989) (citing *Bertrand*, 700 F.2d at 245; *Barrios*, 465 F.2d at 1164–65).

Second, BHOOI cites *Bertrand v. International Mooring and Marine, Inc.*, a case in which the Fifth Circuit set forth an exception to the requirement that a fleet be under common ownership and control, reasoning that "we will not allow employers to deny Jones Act coverage to seamen by arrangements with third parties regarding the vessel's operation or by the manner in which work is assigned."[119] Here, unlike in *Bertrand*, Hurst does not contend that he is a seaman by virtue of his assignment to a fleet of vessels. Accordingly, the case is not controlling here.

Third, BHOOI cites *Sims v. Marine Catering Services, Inc.*, in which a district court found that the plaintiff, an employee of a catering company hired to provide services onboard a ship, was a member of the ship's crew, and permanently attached to the ship until his injury.[120] Although BHOOI attempts to distinguish *Sims* on the basis that "Hurst's connection was not to the West Esperanza," but rather to BHOOI,[121] it does not point to any specific facts in the record indicating that no genuine issue of material fact exists regarding whether Hurst's connection to the West Esperanza was substantial in nature.

BHOOI also argues that Hurst was actually assigned to the TLP, not to the West Esperanza.[122] The Court has addressed this issue above, and has concluded that genuine issues of material fact exist regarding whether Hurst was assigned to the West Esperanza. As to whether Hurst's connection to the West Esperanza was substantial in nature, BHOOI has advanced a number of creative, though unfounded, legal arguments, but has failed to point to the absence of any genuine issue of material fact and show that it is entitled to judgment as a matter of law. Accordingly,

---

[119] *Id.*

[120] 217 F.Supp.511, 514 (D. La. 1963).

[121] Rec. Doc. 27-1 at p. 23.

[122] *Id.* at p. 18.

BHOOI has failed to carry its initial burden of showing that it is entitled to summary judgment as to this component of the *Chandris* test.

        **c.**      **Seaman Status**

The Court has found that genuine issues of material fact exist regarding whether Hurst "contribut[ed] to the function of the vessel or to the accomplishment of its mission."[123] Further, the Court has found that genuine issues of material fact exist regarding whether Hurst had a connection to the West Esperanza that was substantial in duration. Finally, BHOOI has failed to carry its initial burden of showing that no genuine issue of material fact exists regarding whether Hurst's connection to the West Esperanza was substantial in nature. Thus, BHOOI's motion must be denied.

## V. Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Defendant Baker Hughes Oilfield Operations, Inc.'s "Motion for Summary Judgment"[124] is **DENIED.**

**NEW ORLEANS, LOUISIANA,** this ___16th___ day of July, 2015.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[123] *Chandris*, 515 U.S. at 368.

[124] Rec. Doc. 27.